**THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **TONI EWTON,** | § | CIVIL ACTION NO.: _____ |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | |
| **TEXAS RENAISSANCE FESTIVAL,** | § | |
| **LLC**; and **STARGATE MANOR** | § | |
| **ARBORETUM, LLC**, | § | |
| Defendants. | § | JURY DEMANDED |

<u>**PLAINTIFF'S ORIGINAL COMPLAINT**</u>

**I.      <u>PRELIMINARY STATEMENT</u>**

1.      Plaintiff TONI EWTON (hereinafter referred to as "Plaintiff" or "EWTON") makes the following allegations against Defendants TEXAS RENAISSANCE FESTIVAL, LLC and STARGATE MANOR ARBORETUM, LLC (hereinafter collectively referred to as "Defendants") in support of her claims that Defendants violated Title VII of the Civil Rights Act of 1964, as amended (hereinafter referred to as "Title VII"). 42 U.S.C. § 2000e-2. Specifically, Defendants discriminated, harassed, and retaliated against Plaintiff because of her sex/gender. Ultimately, after Plaintiff complained about the unlawful conduct, Defendants took adverse employment action against Plaintiff by terminating her employment.

2.      As a direct result of Defendants' actions, Plaintiff has suffered damages. Thus, by way of this lawsuit, Plaintiff seeks to recover her damages caused by Defendants, including (but not limited to) back pay, front pay, lost benefits, reinstatement, compensatory damages, punitive damages, reasonable attorneys' fees, and costs relating to this lawsuit.

## II.   <u>PARTIES</u>

3.      Plaintiff TONI EWTON is an individual residing in the city of Conroe, in Montgomery County, in the state of Texas.  Plaintiff is a former employee of Defendants.

4.      Defendant TEXAS RENAISSANCE FESTIVAL, LLC (hereinafter referred to as "TRF") is a Texas corporation with its principal place of business in the state of Texas.  Defendant TRF may be served with process by serving its registered agent for service of process, Capitol Corporate Services, Inc., 206 E. 9th Street, Suite 1300, Austin, Texas 78701.[1]

5.      Defendant STARGATE MANOR ARBORETUM, LLC (hereinafter referred to as "SMA") is a Texas Corporation with its principal place of business in the state of Texas.  Defendant SMA may be served with process by serving its registered agent for service of process, George Coulam, 10390 Deerwood Drive, Plantersville, Texas 77363.

6.      Defendants TRF and SMA are considered to be Plaintiff's joint employers and are considered to be a single integrated enterprise.  Defendants are related entities.  Defendants have common management, there is interrelation between operations, there is a centralized control of labor relations, and/or a degree of ownership or financial control.  Defendants both exercise some control over the work or working conditions of its employees, including Plaintiff.  For example, TRF managed Plaintiff's employment benefits.  Additionally, both Defendants were involved in Plaintiff's termination.  Therefore, Defendants may be held jointly liable or as one entity.

---

[1] When Plaintiff started working for Defendants, TRF was not incorporated.  However, Texas Renaissance Festival, Inc. was an active corporation that was registered with the state of Texas, which is the company that Plaintiff started working for in regard to the allegations contained in this Complaint.  However, on April 17, 2020, Texas Renaissance Festival, Inc. filed a Certificate of Merger with the Texas Secretary of State, which corporation merged with TRF.  On April 17, 2020, TRF also filed a Certificate of Merger with the Texas Secretary of State.

### III.   JURISDICTION

7.      This Court has federal question jurisdiction of this action under 28 U.S.C. § 1331, as this case is being brought pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-2.

8.      This Court has personal jurisdiction over Defendant TRF because it is qualified to do business in Texas, including being registered with the Texas Secretary of State.  Additionally, during all relevant time periods identified in this lawsuit, Defendant TRF has performed and continues to perform business within Texas.

9.      This Court has personal jurisdiction over Defendant SMA because it is qualified to do business in Texas, including being registered with the Texas Secretary of State.  Additionally, during all relevant time periods identified in this lawsuit, Defendant SMA has performed and continues to perform business within Texas.

### IV.   VENUE

10.     Venue of this action is proper in this Court, pursuant to 28 U.S.C. § 1391(b)(2), because a substantial part of the events or omissions giving rise to the claim occurred in this judicial district.

11.     Venue of this action is proper in this Court, pursuant to 28 U.S.C. § 1391(b)(1), because Defendants reside in this judicial district.

### V.   EXHAUSTION OF ADMINISTRATIVE REMEDIES

12.     On April 30, 2020, Plaintiff timely filed a Charge of Discrimination against Defendants with the Equal Employment Opportunity Commission (hereinafter referred to as "the EEOC").  On October 30, 2020, the EEOC sent Plaintiff a Notice of Right to Sue.  A copy of the EEOC's Notice of Right to Sue is attached hereto as Exhibit 1.  See Exhibit 1, EEOC's Notice of

Right to Sue.  Plaintiff files this Complaint within ninety (90) days after receiving the EEOC's Notice of Right to Sue.

## VI.     TITLE VII COVERAGE

13.    Plaintiff is an employee within the meaning of Title VII. 42 U.S.C. § 2000e(f). Additionally, Plaintiff belongs to a class protected under the statute.  Specifically, Plaintiff is a female.  42 U.S.C. § 2000e-2.

14.    Defendants are considered to be employers within the meaning of Title VII. Defendants have fifteen (15) or more employees for each working day in each of twenty (20) or more calendar weeks in the current or preceding calendar year. 42 U.S.C. § 2000e(b).

15.    Defendants intentionally discriminated, harassed, and retaliated against Plaintiff because of her sex/gender, which also created a hostile work environment for Plaintiff, in violation of Title VII (as discussed in further detail below).

## VII.     FACTUAL SUMMARY

16.    On or about August 15, 2019, Defendants offered Plaintiff a full-time position as a personal assistant to George Coulam, who was the owner and registered agent of SMA as well as the President, Director, and registered agent of TRF.[2]  On or about August 19, 2019, Plaintiff became employed by Defendants.

17.    In the early months of Plaintiff's tenure with Defendants, Mr. Coulam was involved in a relationship with Mayra Guevara, whom he met at a strip club, and who was paid $2,000.00 a week to fulfill the role of being Mr. Coulam's girlfriend.  All of the fees that were paid to Ms. Guevara for being Mr. Coulam's girlfriend were paid by Plaintiff at Mr. Coulam's direction via Mr. Coulam's personal account.  Knowing what the payments were for, Plaintiff felt

---

[2] During Plaintiff's interview with Defendants, Defendants asked Plaintiff if she had kids and if she was married.

4

uncomfortable making these payments.  However, Plaintiff made said payments because her employer told her to do so.

18.     In early December of 2019, Mr. Coulam and Ms. Guevara separated for one (1) week to due to several disagreements between them.  During that week, Mr. Coulam requested that Plaintiff re-initiate the online dating process for him that had already been in place for about three (3) years, which included having profiles on various dating websites (such as sugardaddy.com, whatsyourprice.com, sugarbabies.com, sugardaddie.com, etc.).  In doing so, Mr. Coulam further instructed Plaintiff to not only lie about his age, but to indicate on his profile that he would provide the women financial compensation.  Although Plaintiff had never been asked to perform such a task for any previous place of employment, Plaintiff felt like she had to acquiesce to Mr. Coulam's demand even though she felt very uncomfortable doing so.  Thus, Plaintiff was forced to work on finding Mr. Coulam's old online dating accounts to determine what was active and what needed to be re-activated for Mr. Coulam.

19.     After the one-week separation between Mr. Coulam and Ms. Guevara, since Mr. Coulam and Ms. Guevara reconciled their relationship, Mr. Coulam temporarily shut down his online dating accounts.  In late December of 2019, Mr. Coulam and Ms. Guevara contemplated getting married.

20.     The relationship between Mr. Coulam and Ms. Guevara required Plaintiff to plan several events associated with it, such as birthday celebrations, Christmas gifts for Ms. Guevara and her family, and the preliminary planning of the family introduction tea party, engagement celebration, wedding planning, and researching prenuptial agreements.  Mr. Coulam also requested that Plaintiff begin to mentor Ms. Guevara on her personal financial planning and budget planning.

21.     On January 10, 2020, Plaintiff accompanied Mr. Coulam to a meet with his personal attorney.  During that meeting, Mr. Coulam directed his attorney to add Plaintiff as: (1) Mr. Coulam's medical power of attorney; (2) a trustee to the George Coulam Foundation; and (3) a board member for SMA.  Additionally, Mr. Coulam told his attorney to begin working on a prenuptial agreement for Ms. Guevara.

22.     Later on in the evening on January 10, 2020, Mr. Coulam and Ms. Guevara had a major disagreement, wherein they decided to not get married anymore.  Thereafter, Mr. Coulam called Plaintiff (which included calling her outside of working hours when she was at home) to tell her to proceed with the online dating process again, including telling Plaintiff that her doing so was urgent and that they needed to hire additional "scrollers" for "scrolling" the online dating websites.  Mr. Coulam considered "scrollers" to be individuals that he hired to "scroll" dating websites for him to help him find women for a romantic and/or sexual connection.  Plaintiff was extremely uncomfortable having to scroll online dating websites for Mr. Coulam due the inappropriateness and unprofessionalism of the request, including knowing the depravity of the websites that Plaintiff had to "scroll" for Mr. Coulam and the barely nude photographs that he would make her access for him.  Thus, Plaintiff complained to Defendants about it (via Mr. Coulam).

23.     During Plaintiff's employment with Defendants, Plaintiff was also required to transcribe Mr. Coulam's personal notes, which referenced "hard ons" and "fondling hours." Moreover, Mr. Coulam would often make references to female body parts, including women's breasts.

24.     The relationship between Mr. Coulam and Ms. Guevara was on and off for weeks, which required intermittent stopping and re-starting of the online dating process for him; and, the

relationship between Mr. Coulam and Ms. Guevara continued to remain that way until Plaintiff's termination.  Other individuals were also brought in to help with the "scrolling" process, which included increasing the number of websites that were viewed daily.

25.     During the next five (5) weeks, although Plaintiff feared that Defendants would retaliate against her, Plaintiff complained to Defendants about the sexual harassment and sex/gender discrimination, as it was creating a hostile working environment for her.  Plaintiff continually told Mr. Coulam that she did not want to be involved with the online dating scrolling for several reasons, including (but not limited to) Mr. Coulam's constant sexual comments and sexually-charged criticisms of the women on the dating websites, such as the candidate being "too fat" or "too ugly."  The "scrolling" process included printing photographs that women texted to Mr. Coulam, which included photographs of these women that were nearly nude.  Mr. Coulam would talk to these women and set up lunch dates with them if he established that the woman had natural breasts and liked the conversation with them, or he would have Plaintiff set up his lunch dates.  However, Plaintiff was always responsible for confirming Mr. Coulam's lunch dates, which meant that Plaintiff was in contact with said women outside of the normal working hours and on the weekends.  Each woman had to pass his test before the second date, which included telling Plaintiff that he would "check out the plumbing" for each woman that he met.

26.     In early February of 2020, Plaintiff was told that Mr. Coulam planned to hire another individual to manage the "scrolling" project.  Plaintiff was further told that when said individual started working for Mr. Coulam, Plaintiff would no longer have anything to do with Mr. Coulam's online dating process.

27.     On February 11, 2020, Plaintiff confronted Mr. Coulam, who confirmed that he was replacing Plaintiff with the individual that he allegedly hired to manage the "scrolling" project.

Apparently, Mr. Coulam was not happy with the number and quality of prospective women that he was receiving during the online dating process.

28.     On February 14, 2020, in retaliation for the complaints that Plaintiff made to Defendants, and because of her gender/sex, Plaintiff was wrongfully terminated.

## VIII.   CAUSES OF ACTION

### FIRST CAUSE OF ACTION

### VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964 –

### SEXUAL HARASSMENT/HOSTILE WORK ENVIRONMENT

(against all Defendants)

29.     Plaintiff realleges and incorporates herein by reference the preceding paragraphs as if fully set forth herein.

30.     Defendants sexually harassed Plaintiff and placed her in a hostile work environment because she is a female, which is a protected class under Title VII.  During Plaintiff's employment, Plaintiff was subjected to unwelcome harassment and a hostile work environment.  As part of Plaintiff's employment, Defendants forced Plaintiff to perform duties that were depraved.

31.     Defendants' sexual harassment was based on the fact that Plaintiff is a female.  The harassment and hostile work environment were objectively unreasonable.  The complained-of conduct was both objectively and subjectively offensive.

32.     The harassment and hostile work environment that Plaintiff experienced affected a term, condition, and/or privilege of Plaintiff's employment.  Importantly, Defendants knew or should have known of the harassment and hostile work environment.  But, Defendants failed to take prompt remedial action to fix it.

33.     As a result of Defendants' sexual harassment and hostile work environment, Plaintiff suffered damages.  Thus, Plaintiff is entitled to all legal and equitable remedies available for Defendants' violation of Title VII, including (but not limited to) punitive damages, attorneys' fees, and costs.

34.     As a result of Defendants' conduct alleged in this Complaint, Plaintiff has suffered and continues to suffer harm, including (but not limited to) lost earnings, lost benefits, and other financial loss (plus interest).

35.     As a further result of Defendants' unlawful conduct, Plaintiff has suffered and continues to suffer impairment to her name and reputation, humiliation, embarrassment, emotion and physical distress, and mental anguish.

## SECOND CAUSE OF ACTION

### VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964 –

### SEX/GENDER DISCRIMINATION

(against all Defendants)

36.     Plaintiff realleges and incorporates herein by reference the preceding paragraphs as if fully set forth herein.

37.     Defendants discriminated against Plaintiff because she is a female.  She was treated differently and less favorably because she is a female even though she was qualified for the position.  Defendants' male employees that were similarly situated were treated more favorably than Plaintiff.  Plaintiff was subjected to an adverse employment action, as the terms and conditions of Plaintiff's employment were altered.  Ultimately, Defendants terminated Plaintiff's employment because she is a female.

38.     As a result of Defendants' discrimination, Plaintiff suffered damages.  Thus, Plaintiff is entitled to all legal and equitable remedies available for Defendants' violation of Title VII, including (but not limited to) punitive damages, attorneys' fees, and costs.

39.     As a result of Defendants' conduct alleged in this Complaint, Plaintiff has suffered and continues to suffer harm, including (but not limited to) lost earnings, lost benefits, and other financial loss (plus interest).

40.     As a further result of Defendants' unlawful conduct, Plaintiff has suffered and continues to suffer impairment to her name and reputation, humiliation, embarrassment, emotion and physical distress, and mental anguish.

## THIRD CAUSE OF ACTION

### VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964 –

### RETALIATION

(against all Defendants)

41.     Plaintiff realleges and incorporates herein by reference the preceding paragraphs as if fully set forth herein.

42.     Plaintiff engaged in protected activity when she complained to Defendants about the discrimination, harassment, and hostile work environment that she was having to endure during her employment with Defendants.

43.     After Plaintiff's complaints were made, an adverse action occurred.  Specifically, Defendants retaliated against her by terminating her employment.  There is a causal connection between Plaintiff's protected activity and the adverse employment action.

44.     Defendants' purported reasons for its retaliatory conduct are merely pretext for the discrimination, harassment, and hostile work environment complaints.

45.     For the foregoing reasons, Defendants discriminated against Plaintiff, in violation of Title VII.

46.     As a result of Defendants' retaliation, Plaintiff suffered damages.  Thus, Plaintiff is entitled to all legal and equitable remedies available for Defendants' violation of Title VII, including (but not limited to) punitive damages, attorneys' fees, and costs.

47.     As a result of Defendants' conduct alleged in this Complaint, Plaintiff has suffered and continues to suffer harm, including (but not limited to) lost earnings, lost benefits, and other financial loss (plus interest).

48.     As a further result of Defendants' unlawful conduct, Plaintiff has suffered and continues to suffer impairment to her name and reputation, humiliation, embarrassment, emotion and physical distress, and mental anguish.

## IX.    DAMAGES

49.     As a direct and proximate result of Defendants' conduct, Plaintiff suffered injuries and damages.  Plaintiff was terminated from employment with Defendants.  Although Plaintiff has diligently sought other employment, Plaintiff has been unable to find a new job at a comparable rate of pay.  In addition, Plaintiff has incurred expenses in seeking other employment.  Plaintiff has also suffered mental anguish and emotional distress.  Thus, Plaintiff seeks back pay, front pay, lost benefits, reinstatement, compensatory damages, punitive damages, reasonable attorneys' fees, and costs relating to this lawsuit.

## X.    ATTORNEYS' FEES

50.     Defendants' actions and conduct (as described herein) and the resulting damage and loss to Plaintiff has necessitated Plaintiff retaining the services of ROSENBERG | SPROVACH, 3518 Travis Street, Suite 200, Houston, Texas 77002, in initiating this lawsuit.

Plaintiff is entitled to an award of attorneys' fees and costs under Title VII.  42 U.S.C. § 2000e-5(k).  As such, Plaintiff seeks recovery of reasonable and necessary attorneys' fees.

## XI.     JURY DEMAND

51.     Plaintiff hereby demands a trial by jury.

## XII.     PRAYER

52.     WHEREFORE, Plaintiff respectfully prays that judgment be entered against Defendants, and that the Court award Plaintiff all appropriate damages and relief, including (but not limited to) the following:

a)     judgment against Defendants for actual damages sustained by Plaintiff (as alleged herein);

b)     judgment against Defendants for back pay lost by Plaintiff (as alleged herein);

c)     judgment against Defendants for front pay (as alleged herein);

d)     grant Plaintiff general damages (for the damage to Plaintiff's reputation);

e)     award Plaintiff punitive damages;

f)     award Plaintiff compensatory damages (for emotional distress, pain and suffering, mental pain, and mental anguish);

g)     order Defendants to pay Plaintiff's attorneys' fees associated with this lawsuit;

h)     order Defendants to pay all costs associated with this lawsuit;

i)     grant Plaintiff pre-judgment interest at the highest legal rate;

j)     grant Plaintiff post-judgment interest at the highest legal rate until paid; and

k)      order such other and further relief, at law or in equity, general or special, to

which Plaintiff may show herself to be justly entitled.

Respectfully submitted,

*/s/ Gregg M. Rosenberg*

Gregg M. Rosenberg
USDC SD/TX No.: 7325
Texas State Bar ID: 17268750
Davina Bloom
USDC SD/TX No.: 2851454
Texas State Bar ID: 24091586

ROSENBERG | SPROVACH
3518 Travis Street, Suite 200
Houston, Texas 77002
Telephone No.: (713) 960-8300
Facsimile No.: (713) 621-6670
gregg@rosenberglaw.com
davina@rosenberglaw.com

Attorney-In-Charge for Plaintiff

ROSENBERG | SPROVACH
3518 Travis Street, Suite 200
Houston, Texas 77002
Telephone No.: (713) 960-8300
Facsimile No.: (713) 621-6670
Attorney for Plaintiff